Goodwin *v.* Toucey.

---

MELVILLE G. GOODWIN *vs.* RINALDO C. TOUCEY.

Third Judicial District, Bridgeport, Oct. Term, 1898. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Sections 3667 and 3668 of the General Statutes authorize any agent or officer of the Connecticut Humane Society to "take charge of" any animal cruelly treated, when its custodian is arrested for cruelty, and also to "take charge of" any animal found "abandoned, neglected or cruelly treated;" to notify the owner, if known, and in the mean time to care for such animal and collect the expense thereof from the owner. Section 3670 provides that any agent or officer of such society may destroy, or cause to be destroyed, any animal "in his charge," when he and two reputable citizens called to view the same in his presence shall certify in writing that in their

judgment such animal appears to be injured, disabled, diseased past recovery, or unfit for any useful purpose. *Held* that § 3670 was obviously intended to supplement §§ 3667 and 3668 and, when construed in connection with them, did not justify the killing of an animal which had not previously come into the charge of the agent as one "abandoned, neglected or cruelly treated," under the terms of one or the other of those sections.

It would be difficult to sustain the constitutionality of an enactment which authorized the killing of an animal by the agent of a humane society, not to prevent cruelty or the spread of some contagious or infectious disease, but merely because such agent and two reputable citizens thought that the animal was injured or sick "past recovery, and unfit for any useful purpose."

Argued November 1st—decided November 29th, 1898.

ACTION to recover the value of a mare which the defendant, as agent of the Connecticut Humane Society, took and caused to be killed; brought to the Court of Common Pleas in Fairfield County and reserved by that court, *Curtis, J.,* upon a finding of facts, for the consideration and advice of this court. *Judgment advised for plaintiff.*

In his answer the defendant alleged that he was an agent of the Connecticut Humane Society, and that "3. On said 7th day of May, 1895, the plaintiff had in his possession the mare referred to in his complaint, and said mare was not properly cared for, was neglected, cruelty treated, injured, disabled, diseased past recovery, and unfit for any useful purpose. 4. On said day, the defendant, acting as an agent of said Society, under the powers conferred on him as such agent by the statute laws of the State of Connecticut and the resolution incorporating such Society, having found said mare not properly cared for, neglected, cruelly treated, injured, disabled, diseased past recovery, and unfit for any useful purpose, took said mare into his charge, and gave notice to the plaintiff, and it being the judgment of the defendant, as such agent, that said mare appeared to be not properly cared for, neglected, cruelty treated, injured, disabled, and diseased past recovery, and unfit for any usual purpose, he called two reputable citizens to view said mare in his presence; first giving the plaintiff notice thereof, and an opportunity to select one of said citizens, which he, the plaintiff, did not

do, and said two reputable citizens having viewed said mare in his presence, gave their written certificate that said mare appeared, in their judgment, to be injured, disabled and diseased past recovery for any useful purpose, as provided by the statute laws of the State of Connecticut, he, the defendant, acting as such agent of the Connecticut Humane Society, and under the power and authority conferred by the statute laws of the State, caused said mare to be destroyed."

The plaintiff demurred to the defendant's answer. The court *pro forma* overruled such demurrer. The plaintiff then made replication, wherein he admitted that the defendant was an agent of the Humane Society, but in substance denied all the other facts set up in the answer. There was a trial. The court made a finding of facts, and reserved all the questions arising in the case for the consideration and advice of this court.

The finding is this: " 2. On May 7th, 1895, the plaintiff was the owner of a mare, fit for some useful purpose, and of the value of $35. 3. On said day the plaintiff, a resident of Stratford, drove said mare harnessed to a wagon, to Bridgeport, and left her properly hitched to a post upon Middle street in said city. 4. Said mare at said time had a raw spot upon the back, another upon the breast, and another upon a fore leg, each about the size of a silver dollar. Upon each hind leg there was a spavin, and said mare was very thin and apparently underfed and ill cared for. Said spavins were incurable. 5. About two o'clock on said day the defendant, an agent of the Connecticut Humane Society, saw said mare so standing on said street and, after inspecting her, unfastened her from the wagon and took her to a livery stable on Fairfield avenue in said city. 6. Said agent in so doing was acting in good faith as agent of said society, and deemed said mare to be in an unfit condition for use. 7. Said agent left a card on the wagon notifying the owner where said mare could be found. 8. The plaintiff, upon returning to the wagon, found said card and went to the stable where said mare was. The defendant informed him that he had taken said mare as agent of said society, and that he intended to

Goodwin v. Toucey.

have her examined by two reputable citizens with a view to having a certificate given setting forth her condition, and then having the mare killed, if her condition as found by him and said two reputable citizens, upon examination, justified such course according to law. 9. The defendant notified the plaintiff that he might name one of the two reputable citizens to examine her, but the plaintiff said he knew no one to name and made no request to name one, but objected to said mare being killed, and said to the agent that he wished to be represented by counsel and heard in the matter, and immediately left the stable to look for an attorney. 10. Thereupon the defendant, disregarding the plaintiff's request, immediately called Owen J. Keenan and F. H. Bronson, two reputable citizens of Bridgeport, to view said mare in his presence, who, after such view, signed the certificate *, and the defendant also signed it. 11. Said two citizens and the defendant acted in good faith in the matter, and said mare appeared to them unfit for any useful purpose, and injured, disabled and diseased past recovery. 12. The mare was at once sent to the bone-yard and killed. 13. Meanwhile the plaintiff found an attorney and returned to the stable in about twenty minutes after he left it, but when he arrived there the examination had been completed, the mare had been sent to the bone-yard, and he was unable to do anything to prevent her being killed. 14. The tests applied by the said two reputable citizens to determine the condition of said mare, were limited to a view of the animal and walking her in the stable-yard. She was not otherwise exercised or driven by them or in their presence. Neither does it appear that there

---

\* Bridgeport, Conn., May 7th, 1895.

We and each of us do hereby certify, that on the 7th day of May, 1895, we were called by R. C. Toucey, an agent, officer of the Connecticut Humane Society, to view, in his presence, a certain sorrel mare, found abandoned and not properly cared for; and that said sorrel mare did then and there appear in our judgment to be injured, disabled or diseased past recovery, for any useful purpose.

Signature of two reputable citizens: Owen J. Keenan, Residence, 111 Fairfield Ave. ; F. H. Bronson, Residence, 102 Fairfield Ave.

Animal, where killed, Bridgeport. Date, May 7th. R. C. Toucey.

was any hearing, either formal or informal, or any inquiry whatever concerning the condition of said mare, other than that involved in said tests.   15. Said mare at the time she was so viewed and condemned was not injured, disabled or diseased past recovery, except as above set forth.   16. By the act of the defendant in causing said mare to be destroyed, the plaintiff sustained a loss and damage of $35."

*Stiles Judson, Jr.*, and *Edward P. Nobbs*, for the plaintiff.

Under the provisions of the statute (§ 3670), an agent of the Connecticut Humane Society may at his pleasure destroy, or cause to be destroyed any animal, whenever its condition shall have been ascertained and certified to in the manner prescribed therein.   It makes no difference what such agent ought or ought not to do under the peculiar circumstances, in any particular case; he may do just as he pleases in the matter.   An Act of the legislature conferring such an arbitrary power is clearly opposed to that provision of the Constitution which provides that no men or set of men are entitled to exclusive privileges from the community.   *State v. Conlon*, 65 Conn. 489.   The statute under which the defendant justifies is also unconstitutional and void, because it is in contravention of the provision which declares that " no person shall be deprived of life, liberty or property but by due course of law."   *Palaivet's Appeal*, 67 Pa. St. 479; 2 Hare, Const. Law, 753.   But the defendant did not even act under the statute.   The plaintiff was deprived of a hearing which he demanded, and to which he was entitled under the law and the Constitution.   No court of last resort has justified the destruction of property without a hearing, except in instances where the public life or health was in danger, and the attendant circumstances and conditions in such cases were such as to apparently justify the act.   *Raymond v. Fish*, 51 Conn. 80; 2 Hare, Const. Law, 762; *Wynehamer v. People*, 13 N. Y. 378–439; *State v. Robbins*, 124 Ind. 312; *Sullivan v. Oneida*, 61 Ill. 249; *Welch v. Wadsworth*, 30 Conn. 155; *People v. Compagnie Gen. Transatlantique*, 107 U. S. 62.   Inspection is not to be accepted when better evidence can be

had.  Whart. on Ev. § 347.  The precise question involved
in this case has been before the courts recently in New York,
and it was there held that an officer of the American society
for the prevention of cruelty to animals cannot establish a
defense in an action against him for the killing of an animal,
merely because in the judgment of two reputable citizens
called by him to view the animal it appeared to be injured
past recovery for any useful purpose; but under New York
Penal Code, § 656, he must prove that in fact it was so in-
jured.  *Sahr* v. *Scholle*, 89 Hun, 42.  See also *Newark, etc.,
H. R. Co.* v. *Hunt*, 50 N. J. L. 308; *Miller* v. *Horton*, 152
Mass. 540; *Pearson* v. *Zehr*, 138 Ill. 48.

*Howard H. Knapp* and *Alfred B. Beers*, with whom was
*Morris W. Seymour*, for the defendant.

There is nothing in our Constitution which, either in ex-
press words or by necessary implication, prohibits legislation
upon the humane treatment of either man or beast.  In no
State is the doctrine that the legislature is *parens patriæ*, been
carried to the extent that it has been in Connecticut, and this
idea extended to cover so large a number of legislative acts.
That it is within police powers of the State to regulate the
manner in which dumb animals, in certain respects and when
in certain conditions, shall be treated for the good of the State
at large, we submit is not an open question.  *Thompson* v.
*Texas*, 17 Tex. App. 253; *Tanner* v. *Albion*, 5 Hill, 121; *Com.*
v. *Cotton*, 8 Gray, 488; *State* v. *Hay*, 29 Me. 457; *Mallock* v.
*Mayer*, 3 Hun, 87; *Com.* v. *Tilton*, 8 Metc. 234; *State* v. *Orr*,
68 Conn. 112; *Ex parte Andrews*, 18 Cal. 679; *Butchers' Union
Co.* v. *Crescent City Co.*, 111 U. S. 746; *Slaughter House Cases*,
16 Wall. 36; *Watertown* v. *Mayo*, 109 Mass. 315; *Gill* v.
*Cincinnati*, 18 Ohio St. 563; *Lentell* v. *New Orleans & C. R.
Co.*, 166 U. S. 704.  Had this mare, which was destroyed,
been killed because she was afflicted with a contagious dis-
ease, there would have been no question but what this de-
fendant would have been justified in doing what he did.
*Waters* v. *People*, 23 Colo. 33.  The wanton, unnecessary,
cruel treatment of a dumb beast, is just as harmful to the

spectator as the result produced by the bull fight, the bear baiting, and prize fighting, and as much within the police power as any of them. Suppose all the parties had believed that the animal was suffering from glanders, and the mare had been destroyed because of their honest belief to that effect, and a *post mortem* examination had disclosed the fact that they were mistaken, would this fact in any way interfere with the legality of the acts of the officer? The tribunal which the State has established to pass upon the question and to decide whether such animal should be killed or not, is a *quasi*-judicial tribunal; its judgment was final and conclusive, and the defendant, acting thereunder, in good faith, and not wantonly and maliciously, cannot be held in damages for the destruction of the animal. *Raymond* v. *Fish*, 51 Conn. 81; *Perry* v. *Reynolds*, 53 id. 535; *Lawton* v. *Steele*, 152 U. S. 133.

ANDREWS, C. J. Laws for the prevention of cruelty to animals now exist in most of the American States, and public sentiment sustains them as being no more than a proper exercise of the police power. So, too, there are laws for the summary destruction of animals diseased with any dangerous or infectious disorder. These laws are police regulations of the government for the destruction of property in a case of immediate necessity, or of a noxious public nuisance. Prentice, Police Powers, 124.

The case now before us goes somewhat further than the laws just mentioned. The defendant justified his taking and killing the animal of the plaintiff, under the provision of § 3670 of the General Statutes, which provides that " any agent or officer of said society (*i. e.* the Connecticut Humane Society) may lawfully destroy, or cause to be destroyed, any animal in his charge when, in the judgment of such agent or officer and of two reputable citizens called to view the same in his presence, one of whom may be selected by the owner of said animal, if he shall so request, and who shall give their written certificate thereto, such animal appears to be injured, disabled, diseased past recovery, or unfit for **any useful purpose**."

If this section of the statute is read alone, it apparently authorizes the killing of an animal by an agent or officer of the Humane Society, not to prevent cruelty, or to prevent the spread of some contagious or infectious disease, but whenever such agent and two reputable citizens may happen to be of the opinion that the animal is injured or sick " past recovery, or unfit for any useful purpose." If this is the real meaning of this section, then it would be difficult to sustain it as a constitutional enactment. But we do not so understand it. This section must be read, as we think, in connection with the preceding sections, 3667 and 3668. The former one provides that " when any person arrested under any provision of the laws relating to cruelty to animals is, at the time of such arrest, in charge of any vehicle drawn by or containing any animal cruelly treated, any agent of said Humane Society may take charge of such animal and of such vehicle and its contents, and shall give notice thereof to the owner, if known, and shall care and provide for them until their owner shall take charge of the same; provided, the owner shall take charge of them within sixty days from the date of said notice; and the person making such arrest shall have a lien on said animals and vehicle for the expenses of such care and provision." The latter of said sections (3668) is that, " any officer or agent of said society may lawfully take charge of any animal found abandoned, neglected, or cruelly treated, and shall thereupon give notice thereof to the owner, if known, and may provide for such animal until the owner shall take charge of the same; and the expense of such care and provision shall be a charge against the owner of such animal, collectible by said society from the owner by suit."

Section 3670 is obviously intended to be in furtherance of the purposes for which these sections provide. Whenever an animal has come into the " charge " of an agent or officer of the Humane Society under the provisions of one or the other of these sections, and the agent or officer has given notice to the owner of the animal as is therein specified, and has afforded the owner a reasonable time to himself retake the charge of the animal, and the owner has neglected to do

so, and the conditions exist which are mentioned in § 3670, —then, and only then, if at all, can the agent or officer be so " in charge " of an animal that he may " lawfully destroy, or cause it to be destroyed," as is therein provided. The plaintiff's mare, however bad her condition might have been, was not " in charge " of the defendant under either of these sections.

The plaintiff drove his mare from his home in Stratford to Bridgeport. He left her properly hitched in one of the unfrequented streets of that city. The defendant found her at that place. She was not abandoned by her owner, nor was she being cruelly treated, and it is not pretended that she had any contagious or dangerous disease. But the defendant unhitched her, took her out of the wagon and led her away to a livery stable where, in an almost suspiciously brief space of time, and certainly with scant regard for the requests of the plaintiff, those proceedings were had which the defendant says show that he was justified in causing her to be destroyed. We think he is wholly wrong. He could be justified for this summary destruction of the plaintiff's property only by a careful and rigorous adherence to the conditions set out in these sections of the statute which we have mentioned.

The Court of Common Pleas is advised to render judgment for the plaintiff to recover $35 and costs.

In this opinion the other judges concurred.